## Chambers v. Thomas et al.

November 14, 1947.

Charles L. Seale, Judge.

John W. Walker and R. Russell Grant for appellant.

Shumate & Shumate and J. M. Wolfinbarger for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming.

Appellant, Jean Paige Lackey Chambers, instituted this action on Feb. 14, 1944, to set aside and cancel a deed she had executed on April 14, 1943, to her aunt, Mrs. Ora Thomas, her uncle, William Noland, and her two infant children, Chester and Billy Elkin. The grounds on which she sought to cancel the deed were failure of consideration, fraud and undue influence. After hearing much proof by depositions, the chancellor refused to set aside the deed and this appeal followed.

At the outset we are met with two questions of practice. Appellant insists that the court erred in forcing her to elect whether she would prosecute the cause of action set out in the third paragraph of her petition wherein she sought to collect $600 rent she alleged Noland owed her, or the one set out in the second paragraph wherein she sought a cancellation of the deed. Appellees seriously urge that the court should have sustained their general demurrer to the petition.

Whether or not the court erred in forcing appellant to elect, a question we do not decide, did not prejudice her as the record shows that Noland did not owe her any rent. Likewise, the chancellor in overruling appellees' demurrer did not prejudice them since he decided in their favor on the merits of the controversy, and we have concluded that we must affirm his judgment.

This is rather a large record and we will not attempt to analyze minutely the evidence but will content ourselves by stating in a general way what the evidence shows. Appellant's father was a successful farmer in Estill County. At his death in 1938 he left a consider-

able estate consisting of lands, livestock and farming equipment. His widow carried on the farming and dairying business and increased the estate. She died intestate some two years after her husband, leaving appellant as her only child and heir-at-law.

When appellant was fourteen years of age she married Chester Elkin, who is the father of her two sons, Chester nine years old and Billy seven years old. Soon after her mother's death, appellant started dissipating her inheritance. She sold one of the farms and invested the proceeds in a tourist camp in Montgomery County which she and Chester operated for a while and then sold at a loss. She and Chester were divorced in January 1942. Right after obtaining a divorce she married Wilton Chambers. By this time appellant had run through all of her property, except the home farm consisting of 170 acres, worth between $6,000 and $7,000, which had a rental value of $350 or $375 a year. 'She and her second husband were not getting along well and to make matters worse, when he went into the army his family moved in with her on the home farm.

The first husband was in the army and he made an allotment to his children and the second husband made an allotment to appellant as his wife. Appellant supplemented her income by working in a defense plant, yet she could not make ends meet.

She not only sold the dairy herd, but all stock and farming equipment, and all she had left of the rather ample estate she inherited from her parents was the home farm. It appears that the Chambers family were attempting to get from her the title to this land. At least, she feared they were going to do so and she seemed to doubt her strength and ability to resist their importunities. On one occasion she requested Mr. Hunter Shumate, a lawyer in Irvine who had represented her deceased father, to write a deed conveying a half interest in her farm to her husband, Chambers, but Mr. Shumate advised against it. Then too, she feared the family of her first husband had designs upon her property. She turned to her aunt, Mrs. Thomas, and her uncle, Judge Noland, for help.

The three of them went to the office of Mr. Shumate. Appellant desired to deed the farm to Judge Noland,

but he refused to accept it. Likewise, she wanted Mrs. Thomas to take a deed to the land, and she also refused. Mr. Shumate devised a plan to protect appellant from herself and from her in-laws and to save the land for her children. He wrote a deed wherein appellant conveyed the land to Mrs. Thomas for life and should she die before Judge Noland, then he takes a life estate under the deed, with remainder to appellant's two sons and any after-born children. Should all appellant's children die without issue, then the .title to the land vests in the heirs of the late O. K. .Noland, who are appellant's nearest of kin after her children.

This deed further provides that these life estates shall terminate upon the death of the grantor; and if any of her children be then under 21 years of age, the proceeds from the farm are to be used for their maintenance and education. The deed contained this further paragraph. "As part of the consideration for this conveyance the life tenant in possession shall from the proceeds of livestock and crops sold or used from said farm maintain party of first part and her children during infancy."

The only consideration for this deed was that Mrs. Thomas and Judge Noland would operate the farm for the benefit of appellant and her children. Both Mrs. Thomas and Judge Noland testified that the only interest they claim under the deed is that they took the land as trustees for the benefit of appellant and her children. Judge Noland operated the farm in the year 1943 and gave half of the proceeds to appellant. It is insisted by appellant that the paragraph just above quoted from the deed makes it the duty of her aunt and uncle to support her and her children from the farm, which she says they have not done. There is no merit in this contention. The deed imposes no duty on the trustees to support the grantor and her children. Their only obligation is to use the proceeds of the land for that purpose.

When Judge Noland was operating the farm in 1943, appellant and her oldest son lived there with him and his wife. But harmony did not prevail in the home. He used some harsh words towards appellant when she came to his office and it is evident he and his niece do

not get along. However, this is not an action to determine whether or not he and Mrs. Thomas are properly operating the farm, or are true to their trust, but is one to cancel a deed on account of failure of consideration, fraud and undue influence.

Appellant was but 22 years of age when she executed this deed. She claims that she was not only a young girl, inexperienced in business matters, but that she did not understand legal terminology and that through fraud upon the part of Mr. Shumate and mistake upon her part, she executed the deed. She further charges that through undue influence of her aunt and her uncle, she was induced to make the deed.

This record fails to reveal that any advantage was taken of this young woman by Mr. Shumate, or by her uncle or aunt. The proof shows that appellant sought her uncle and aunt and her deceased father's attorney to assist her in her troubles. Neither the uncle nor the aunt wanted to accept title to this land, and they both now disclaim any interest in it except as trustees to farm the land for the benefit of appellant and her children. Mr. Shumate merely tried to help appellant in her dilemma and with the assistance of her relatives to protect appellant and her children from her dissipating her property, as well as from any designs which her in-laws had thereon.

The proof shows that this young woman thoroughly understood what she was doing, and that there has been no failure of consideration. Should she be dissatisfied with the manner in which the trustees are handling the farm, she may institute appropriate proceedings against them—but here she has no such action. The instant suit is to cancel the deed on account of failure of consideration, fraud and undue influence. It might not be amiss to say that appellant would be in much better financial condition today had she executed such a deed immediately following her mother's death.

Attorneys on each side cite many authorities wherein this court has cancelled and has refused to cancel deeds upon the same grounds alleged in this petition. But we deem it unnecessary to discuss or analyze those authorities, because the record before us is lacking in evidence to support any of the grounds for cancellation

set out in the petition. It is patent that this is not a case where we would be justified in setting aside the chancellor's findings of fact.

For the reasons given, the judgment is affirmed.